# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| | § | |
| AGIS SOFTWARE DEVELOPMENT LLC, | § | Case No. |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| ONEPLUS TECHNOLOGY (SHENZHEN) | § | |
| CO., LTD., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, AGIS Software Development LLC ("AGIS Software" or "Plaintiff") files this Complaint against Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus" or "Defendant") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

## THE PARTIES

1.     Plaintiff AGIS Software is a limited liability company, organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670.  AGIS Software is the owner of all right, title, and interest in and to U.S. Patent Nos. 8,213,970, 9,445,251, 9,467,838, 9,749,829, and 9,820,123 (the "Patents-in-Suit").

2.     On information and belief, Defendant is a corporation organized and existing under the laws of China, with a principal place of business at 18F, Tairan Building, Block C, Tairan 8th Road, Chegongmiao, Futian District, Shenzhen, Guangdong 518040, China.  On information and belief, Defendant may be served pursuant to the provisions of the Hague Convention.  OnePlus is a leading manufacturer and seller of smartphones in the world and throughout the United States.

On information and belief, OnePlus does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

3.      Defendant has authorized sellers and sales representatives that offer and sell products pertinent to this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605; AT&T Store, 1712 East Grand Avenue, Marshall, Texas 75670; Sprint Store, 1806 East End Boulevard North, Suite 100, Marshall, Texas 75670; T-Mobile, 900 East End Boulevard North, Suite 100, Marshall, Texas 75670; Verizon authorized retailers, including Russell Cellular, 1111 East Grand Avenue, Marshall, Texas 75670; Victra, 1006 East End Boulevard N., Marshall, Texas 75670; and Cricket Wireless authorized retailer, 120 East End Boulevard South, Marshall, Texas 75670.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

5.      This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  On information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District.  Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant is subject to personal jurisdiction in this Judicial District, has committed acts of patent infringement in this Judicial District, and has regular and established places of business in this Judicial District.  Defendant, through its own acts and/or through the acts of others, makes, uses, sells, distributes, exports from, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with this Judicial District, such that this venue is a fair and reasonable one.  Further, on information and belief, Defendant has admitted or not contested proper venue in this Judicial District in other patent infringement actions.

### PATENTS-IN-SUIT

7.      On July 3, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,213,970 (the "'970 Patent") entitled "Method of Utilizing Forced Alerts for Interactive Remote Communications."  On September 1, 2021, the United States Patent and Trademark Office issued an *Inter Partes* Review Certificate for the '970 Patent cancelling claims 1 and 3-9.  On December 9, 2021, the United States Patent and Trademark Office issued an *Ex Parte* Reexamination Certificate for the '970 Patent determining claims 2 and 10 (as amended) and claims 11-13 to be valid and patentable.  A true and correct copy of the '970 Patent, which includes the September 1, 2021 *Inter Partes* Review Certificate and the December 9, 2021 *Ex Parte* Reexamination Certificate, is available at: https://ppubs.uspto.gov/pubwebapp/external.html?q=8,213,970.pn.&db=USPAT.

8.      On September 13, 2016, the United States and Trademark Office duly and legally issued U.S. Patent No. 9,445,251 (the "'251 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  On June 8, 2021, the United States Patent and

Trademark Office issued an *Ex Parte* Reexamination Certificate of the '251 Patent determining claims 1-35 to be valid and patentable.  A true and correct copy of the '251 Patent, which includes the June 8, 2021 *Ex Parte* Reexamination Certificate, available at: https://ppubs.uspto.gov/pubwebapp/external.html?q=9,445,251.pn.&db=USPAT.

9.     On October 11, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,467,838 (the "'838 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  On May 27, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate for the '838 Patent confirming the validity and patentability of claims 1-84.  A true and correct copy of the '838 Patent, which includes the May 27, 2021 Ex Parte Reexamination Certificate, is available at: https://ppubs.uspto.gov/pubwebapp/external.html?q=9,467,838.pn.&db=USPAT.

10.     On August 29, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,749,829 (the "'829 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  On August 16, 2021, the United States Patent and Trademark Office issued an *Ex Parte* Reexamination Certificate for the '829 Patent confirming the validity and patentability of claims 1-68.  A true and correct copy of the '829 Patent, which includes the August 16, 2021 *Ex Parte* Reexamination Certificate, is available at: https://ppubs.uspto.gov/pubwebapp/external.html?q=9,749,829.pn.&db=USPAT.

11.     On November 14, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,820,123 (the "'123 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  On September 24, 2021, the United States Patent and Trademark Office issued an *Ex Parte* Reexamination Certificate for the '123 Patent confirming the validity and patentability of claims 1-48.  A true and correct copy of the '123 Patent,

which includes the September 24, 2021 *Ex Parte* Reexamination Certificate, is available at: https://ppubs.uspto.gov/pubwebapp/external.html?q=9,820,123.pn.&db=USPAT.

12.     AGIS Software is the sole and exclusive owner of all rights, title, and interest in the Patents-in-Suit, and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.  AGIS Software also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

13.     Malcolm K. "Cap" Beyer, Jr., a graduate of the United States Naval Academy and a former U.S. Marine, is the CEO of AGIS Software and a named inventor of the AGIS Software patent portfolio.  Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS, Inc.") shortly after the September 11, 2001 terrorist attacks because he believed that many first responder and civilian lives could have been saved through the implementation of a better communication system.  He envisioned and developed a new communication system that would use integrated software and hardware components on mobile devices to give users situational awareness superior to systems provided by conventional military and first responder radio systems.

14.     AGIS, Inc. developed prototypes that matured into its LifeRing system.  LifeRing provides first responders, law enforcement, and military personnel with what is essentially a tactical operations center built into hand-held mobile devices.  Using GPS-based location technology and existing or special-purpose cellular communication networks, LifeRing users can exchange location, heading, speed, and other information with other members of a group, view each other's locations on maps and satellite images, and rapidly communicate and coordinate their efforts.

5

15.     AGIS Software licenses its patent portfolio, including the '970, '838, '251, '829, and '123 Patents, to AGIS, Inc.  AGIS, Inc. has marked its products accordingly.  AGIS Software and all previous assignees of the Patents-in-Suit have complied with the requirements of 35 U.S.C. § 287(a).

16.     OnePlus has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, distributing, exporting from, and/or importing, and by actively inducing others to make, use, sell, offer to sell, distribute, export from, and/or import products that infringe the Patents-in-Suit  Such products include at least the following OnePlus mobile devices: OnePlus 3, OnePlus 3T, OnePlus 5, OnePlus 5T, OnePlus 6, OnePlus 6T, OnePlus 7, OnePlus 7 Pro, OnePlus 7T, OnePlus 7T Pro, OnePlus 8, OnePlus 8 Pro, OnePlus 8T, OnePlus 9, OnePlus 9 Pro, and OnePlus 10 Pro (collectively, the "Accused Products").[1]  The Accused Products infringe each of the Asserted Patents.

17.     The Accused Products include functionalities that allow users to form and/or join networks or groups, share and view locations with other users, display symbols corresponding to locations (including locations of other users) on a map, and communicate with other users via text, voice, and multimedia-based communication.   Additionally, the Accused Products include functionalities to allow users to form and/or join networks or groups.  Additionally, the users may form groups that include their own devices in order to track their own lost or stolen devices, as shown below; to send and receive communications from their own lost or stolen Accused Products; and to remotely control the lost or stolen Accused Products.  The Accused Products include the functionalities to display map information, including symbols corresponding with users, entities, and locations.   Additionally, the Accused Products include functionalities to form groups that

---

[1] *See, e.g.,* https://www.oneplus.com/store/phone.

include their own devices in order to track, remotely monitor and control, and/or communicate with other users' devices.    The Accused Products include functionalities to enable communications, such as voice calls between users.  The Accused Products practice the claims of the Asserted Patents to improve user experiences and to improve OnePlus's position in the market.





## COUNT I
### (Infringement of the '970 Patent)

18.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

19.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any Accused Products and/or products that embody the inventions of the '970 Patent.

20.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '970 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '970 Patent including, but not limited to, the Accused Products.

21.     Defendant has and continues to directly infringe at least claim 10 of the '970 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

22.     Defendant has and continues to indirectly infringe at least claim 10 of the '970 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '970 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '970 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '970 Patent in violation of 35 U.S.C. § 271(b).

Alternatively, Defendant believed there was a high probability that others would infringe the '970 Patent but remained willfully blind to the infringing nature of others' actions.

23.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 10 of the '970 Patent in the United States because Defendant's customers use the Accused Products, including at least the Find My Device (formerly known as Android Device Manager) Apps and/or services or the Accused Products with the Find My Device Apps and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least claim 10 of the '970 Patent in violation of 35 U.S.C. § 271.   Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10T_5G_User_Manual_EN.pdf;

https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf;

https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10_Pro_User_Manual_EN.pdf;   and   Defendant's   agents   and representatives located within this Judicial District.  Defendant is thereby liable for infringement of the '970 Patent under 35 U.S.C. § 271(b).  Alternatively, Defendant believed there was a high probability that others would infringe the '970 Patent but remained willfully blind to the infringing nature of others' actions.

24.     For example, Defendant directly infringes and/or indirectly infringes by instructing its customers to infringe by performing claim 10 of the '970 Patent, including: a method of

receiving, acknowledging and responding to a forced message alert from a sender PDA/cell phone to a recipient PDA/cell phone, wherein the receipt, acknowledgment, and response to said forced message alert is forced by a forced message alert software application program, said method comprising the steps of: receiving an electronically transmitted electronic message; identifying said electronic message as a forced message alert, wherein said forced message alert comprises a voice or text message and a forced message alert application software packet, which triggers the activation of the forced message alert software application program within the recipient PDA/cell phone; transmitting an automatic acknowledgment of receipt to the sender PDA/cell phone, which triggers the forced message alert software application program to take control of the recipient PDA/cell phone and shows the content of the text message and a required response list on the display recipient PDA/cell phone or to repeat audibly the content of the voice message on the speakers of the recipient PDA/cell phone and show the required response list on the display recipient PDA/cell phone; and transmitting a selected required response from the response list in order to allow the message required response list to be cleared from the recipient's cell phone display, whether said selected response is a chosen option from the response list, causing the forced message alert software to release control of the recipient PDA/cell phone and stop showing the content of the text message and a response list on the display recipient PDA/cell phone and/or stop repeating the content of the voice message on the speakers of the recipient PDA/cell phone; displaying the response received from the PDA cell phone that transmitted the response on the sender of the forced alert PDA/cell phone; and providing a list of the recipient PDA/cell phones that have automatically acknowledged receipt of a forced alert message and their response to the forced alert message; and displaying a geographical map with georeferenced entities on the display of the sender PDA/cell phone; obtaining location and status data associated with the recipient

PDA/cellphone; and presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cellphone based on at least the location data. For example, the Accused Products include features as shown below.

**Find My Device**

**Find My Device** helps you locate your device remotely and keeps your data safe if the device is lost.

Ways to locate your Android device

- Find My Device: Get it on Google Play.

- Web: Visit android.com/find.

- Google: Search "find my device". [2]

**Maps**

Get directions and other location-based information. You must enable location services to use Google Maps. [3]

25.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '970 Patent in an amount to be proved at trial.

---

[2] https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf
[3] https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf

26.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '970 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '251 Patent)**

27.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

28.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any Accused Products and/or products that embody the inventions of the '251 Patent.

29.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '251 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '251 Patent including, but not limited to, the Accused Products.

30.     Defendant has and continues to directly infringe at least claim 24 of the '251 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

31.     Defendant has and continues to indirectly infringe at least claim 24 of the '251 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '251 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '251 Patent at least as of the

13

date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '251 Patent.   Alternatively, Defendant believed there was a high probability that others would infringe the '251 Patent but remained willfully blind to the infringing nature of others' actions.

32.      For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 24 of the '251 Patent in the United States because Defendant's customers use the Accused Products, including at least Google Maps Apps and/or services or the Accused Products with the Google Maps Apps and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least claim 24 of the '251 Patent in violation of 35 U.S.C. § 271.   Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10T_5G_User_Manual_EN.pdf;

https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf;

https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10_Pro_User_Manual_EN.pdf;      and      OnePlus      agents      and representatives located within this Judicial District.   Defendant is thereby liable for infringement of the '251 Patent under 35 U.S.C. § 271(b).   Alternatively, Defendant believed there was a high probability that others would infringe the '251 Patent but remained willfully blind to the infringing nature of others' actions.

33.     For example, Defendant's Accused Products are pre-installed with at least the Google Maps App which allows users to share their locations and view other users' locations on a map and to communicate with those users via the Google Maps App which is integrated with Messages, which is also pre-installed on the Accused Products.

34.     For example, the exemplary Accused Products allows users to establish groups and to exchange messages via interaction with servers which provide the Google Maps service, among other relevant services.  The exemplary Accused Products further allows users to retrieve map information from multiple sources including street-view maps.

35.     The exemplary Accused Products are programmed to receive messages from other devices where those messages relate to joining groups, as depicted below (*e.g.*, https://support.google.com/maps/answer/7326816?visit_id=638038217506681650-271792540&hl=en&rd=1;

https://support.google.com/contacts/answer/30970?hl=en&visit_id=638038217507566921-2877008583&rd=1).

## Create a group

1. Go to Google Contacts ⧉ .
2. At the left under "Labels," click **Create label**.
3. Type a name, then click **Save**.

## Add or remove contacts from a group

Add contacts to a group                                                          ⌃

1. Go to Google Contacts ⧉ .
2. Select one of the following:
   - **A single contact:** Check the box next to the contact name.
   - **Multiple contacts:** Check the boxes next to all the contacts you want to add.
   - **All contacts:** Check the box next to any contact and in the top left, click **Selection Actions** › **All.**
3. At the top, click Manage labels ▱.
4. Click the group label you want.
5. Click **Apply**.

**Tip:** If a contact has multiple email addresses, only their default email address is added to the label group. You can use the Contacts app 👤 on an Android device to change the default email address for a contact.

36.     The exemplary Accused Products are further programmed to facilitate participation in the group by communicating with a server and sending to and receiving location information, as depicted below (*e.g.*, https://developers.google.com/maps/documentation/android-sdk/location).

16

### The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.

- Listen for location changes.

- Determine the mode of transportation, if the device is moving.

- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Maps SDK for Android, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

37.     This location information is presented on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices.   These symbols are positioned on the map at positions corresponding to the locations of the other devices, as depicted below (*e.g.*, https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



38.     The exemplary Accused Products are programmed to permit users to request and display additional maps by, for example, moving the map screen and/or by selecting satellite image maps.   The exemplary Accused Products are further programmed to permit interaction with the

display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

39.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '251 Patent in an amount to be proved at trial.

40.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '251 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

<u>**COUNT III**</u>
**(Infringement of the '838 Patent)**

41.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

42.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any Accused Products and/or products that embody the inventions of the '838 Patent.

43.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '838 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '838 Patent including, but not limited to, the Accused Products.

44.     Defendant has and continues to directly infringe at least claim 54 of the '838 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

45.     Defendant has and continues to indirectly infringe at least claim 54 of the '838 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally

or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '838 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '838 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '838 Patent.  Alternatively, Defendant believed there was a high probability that others would infringe the '838 Patent but remained willfully blind to the infringing nature of others' actions.

46.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 54 of the '838 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps Apps and/or services or the Accused Products with the Google Maps Apps and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '838 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10T_5G_User_Manual_EN.pdf; https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf; https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10_Pro_User_Manual_EN.pdf;     and     OnePlus     agents     and representatives located within this Judicial District.  Defendant is thereby liable for infringement

of the '838 Patent under 35 U.S.C. § 271(b).  Alternatively, Defendant believed there was a high

probability that others would infringe the '838 Patent but remained willfully blind to the infringing

nature of others' actions.

47.     For example, Defendant's Accused Products are pre-installed with at least the

Google Maps App which allows users to share their locations and view other users' locations on a

map and to communicate with those users via the Google Maps App (as shown below) which is

integrated with Messages and which is also pre-installed on the Accused Products.



48.     Additionally, the exemplary Accused Products allows users to establish groups and

to exchange messages via interaction with servers which provide the Google Maps service, among

other relevant services.  The exemplary Accused Products further allows users to retrieve map

information from multiple sources, including street-view maps, as well as satellite renderings.

49.     The exemplary Accused Products are programmed to form and join groups by

transmitting                                     messages                                    (*e.g.*,

https://support.google.com/maps/answer/7326816?visit_id=638038217506681650-

271792540&hl=en&rd=1;

https://support.google.com/contacts/answer/30970?hl=en&visit_id=638038217507566921-2877008583&rd=1).

## Create a group

1. Go to Google Contacts ⧉ .
2. At the left under "Labels," click **Create label**.
3. Type a name, then click **Save**.

## Add or remove contacts from a group

Add contacts to a group                                                      ⌃

1. Go to Google Contacts ⧉ .
2. Select one of the following:
   - **A single contact:** Check the box next to the contact name.
   - **Multiple contacts:** Check the boxes next to all the contacts you want to add.
   - **All contacts:** Check the box next to any contact and in the top left, click **Selection Actions** ⌄ **All.**
3. At the top, click Manage labels ▭.
4. Click the group label you want.
5. Click **Apply**.

**Tip:** If a contact has multiple email addresses, only their default email address is added to the label group. You can use the Contacts app ▪ on an Android device to change the default email address for a contact.

50.     The exemplary Accused Products are further programmed to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information,           as           depicted           below           (*see,*           *e.g.,* https://developers.google.com/maps/documentation/android-sdk/location).

### The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.

- Listen for location changes.

- Determine the mode of transportation, if the device is moving.

- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Maps SDK for Android, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

51.     The location information is presented on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices.  The symbols are positioned on the map at positions corresponding to the locations of the other devices, as depicted below (*e.g.*, https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



52.     The exemplary Accused Products are further programmed to permit users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting satellite images or other types of maps.  The exemplary Accused Products are

further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

53.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '838 Patent in an amount to be proved at trial.

54.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '838 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

### COUNT IV
**(Infringement of the '829 Patent)**

55.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

56.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any products that embody the inventions of the '829 Patent.

57.     Defendant has and continues to directly infringe at least claim 34 of the '829 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

58.     Defendant has and continues to indirectly infringe at least claim 34 of the '829 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the infringing Accused Products and by instructing users of the Accused Products to perform at least the method of claim 34 in the '829

Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '829 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of at least claim 34 of the '829 Patent in violation of 35 U.S.C. § 271(b).  Alternatively, Defendant believed there was a high probability that others would infringe the '829 Patent but remained willfully blind to the infringing nature of others' actions.

59.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 34 of the '829 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps Apps and/or services or the Accused Products with the Google Maps Apps and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '829 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10T_5G_User_Manual_EN.pdf; https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf; https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10_Pro_User_Manual_EN.pdf;     and     OnePlus     agents     and representatives located within this Judicial District.  Defendant is thereby liable for infringement of the '829 Patent under 35 U.S.C. § 271(b).  Alternatively, Defendant believed there was a high

probability that others would infringe the '829 Patent but remained willfully blind to the infringing nature of others' actions.

60.     For example, Defendant directly infringes and/or indirectly infringes by instructing its customers to infringe by a system comprising: one or more server devices programmed to perform operations comprising: forwarding, to a first device, a request to join a group, wherein the request is received from a second device and the group includes the second device; based on acceptance of the request by the first device, joining the first device to the group, wherein joining the first device to the group comprises authorizing the first device to repeatedly share device location information and repeatedly engage in remote control operations with each device included in the group; receiving a first message comprising a request for a first updated location of the first device, wherein the first message is sent by the second device and includes data identifying the first device; in response to receiving the first message, sending, to the first device, a second message comprising a request for the first updated location of the first device; after sending the second message, receiving a response to the second message, the response including first location information comprising the first updated location of the first device; sending, to the second device, the first location information and georeferenced map data, wherein the second device is configured to present, via a display of the second device, a georeferenced map based on the georeferenced map data and a symbol corresponding to the first device, wherein the symbol is positioned on the georeferenced map at a first position corresponding to the first updated location of the first device, and wherein the georeferenced map data relate positions on the georeferenced map to spatial coordinates; after sending the first location information and the georeferenced map data to the second device, receiving second location information comprising a second updated location of the first device and sending the second location information to the second device, wherein the second

device is configured to use the server-provided georeferenced map data and the second location information to reposition the symbol on the georeferenced map at a second position corresponding to the second updated location of the first device; receiving a third message related to remotely controlling the first device to perform an action, wherein the third message is sent by the second device; and after receiving the third message, sending, to the first device, a fourth message related to remotely controlling the first device to perform the action, wherein the first device is configured to perform the action based on receiving the fourth message.  For example, the Accused Products include features, as shown below.

61.     For example, Defendant's Accused Products allow users to share their locations and view other users' locations on a map and to communicate with those users via the Google Maps Apps, and related services and/or servers (as shown below) which is integrated with Messages and which is also pre-installed on the Accused Products.



62.     Additionally, the exemplary Accused Products allows users to establish groups and to exchange messages via interaction with servers which provide the Google Maps servers, among other relevant services.  The exemplary Accused Products further allows users to retrieve map information from multiple sources including street-view maps, as well as satellite renderings.

63.     The exemplary Accused Products are programmed to form and join groups by transmitting messages (*e.g.*, https://support.google.com/maps/answer/7326816?visit_id=638038217506681650-271792540&hl=en&rd=1; https://support.google.com/contacts/answer/30970?hl=en&visit_id=638038217507566921-2877008583&rd=1).

## Create a group

1. Go to Google Contacts ⧉ .
2. At the left under "Labels," click **Create label**.
3. Type a name, then click **Save**.

## Add or remove contacts from a group

Add contacts to a group                                                         ⌃

1. Go to Google Contacts ⧉ .
2. Select one of the following:
   - **A single contact:** Check the box next to the contact name.
   - **Multiple contacts:** Check the boxes next to all the contacts you want to add.
   - **All contacts:** Check the box next to any contact and in the top left, click **Selection Actions** › **All.**
3. At the top, click Manage labels ▢ .
4. Click the group label you want.
5. Click **Apply**.

**Tip:** If a contact has multiple email addresses, only their default email address is added to the label group. You can use the Contacts app 👤 on an Android device to change the default email address for a contact.

64.     The exemplary Accused Products are further programmed to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information, as depicted below (*see,* *e.g.*, https://developers.google.com/maps/documentation/android-sdk/location).

### The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.
- Listen for location changes.
- Determine the mode of transportation, if the device is moving.
- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Maps SDK for Android, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

65.     The location information is presented on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices.  The symbols are positioned on the map at positions corresponding to the locations of the other devices, as depicted below (*e.g.*, https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



66.     The exemplary Accused Products are further programmed to permit users to request and display additional maps by, for example, moving the map screen and/or by selecting satellite image maps.  The exemplary Accused Products are further programmed to permit interaction with

the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

67.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '829 Patent in an amount to be proved at trial.

68.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '829 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

**COUNT V**
**(Infringement of the '123 Patent)**

69.     Paragraphs 1 through 17 are incorporated herein by reference as if fully set forth in their entireties.

70.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any products that embody the inventions of the '123 Patent.

71.     Defendant has and continues to directly infringe at least claim 23 of the '123 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

72.     Defendant has and continues to indirectly infringe at least claim 23 of the '123 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the infringing Accused Products and by instructing users of the Accused Products to perform at least the method of claim 23 in the '123 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '123

Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of at least claim 23 of the '123 Patent in violation of 35 U.S.C. § 271(b).  Alternatively, Defendant believed there was a high probability that others would infringe the '123 Patent but remained willfully blind to the infringing nature of others' actions.

73.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 23 of the '123 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps Apps and/or services or the Accused Products with the Google Maps Apps and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '123 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10T_5G_User_Manual_EN.pdf;

https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_9_Pro_User_Manual_EN.pdf;

https://service.oneplus.com/content/dam/support/user-manuals/common/OnePlus_10_Pro_User_Manual_EN.pdf;   and   OnePlus   agents   and representatives located within this Judicial District.  Defendant is thereby liable for infringement of the '123 Patent under 35 U.S.C. § 271(b).

74.     Alternatively, Defendant believed there was a high probability that others would infringe the '123 Patent but remained willfully blind to the infringing nature of others' actions.

For example, Defendant directly infringes and/or indirectly infringes by instructing its customers to infringe by a system comprising: a first device programmed to perform operations comprising: receiving a message sent by a second device, wherein the message relates to joining a group; based on receipt of the message sent by the second device, sending first location information to a first server and receiving second location information from the first server, the first location information comprising a location of the first device, the second location information comprising one or more locations of one or more respective second devices included in the group; sending, from the first device to a second server, a request for georeferenced map data; receiving, from the second server, the georeferenced map data; presenting, via an interactive display of the first device, a georeferenced map and one or more user-selectable symbols corresponding to one or more of the second devices, wherein the symbols are positioned on the georeferenced map at respective positions corresponding to the locations of the second devices represented by the symbols, and wherein the georeferenced map data relate positions on the georeferenced map to spatial coordinates; and identifying user interaction with the interactive display selecting a particular user-selectable symbol corresponding to a particular second device and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the particular second device, wherein identifying the user interaction selecting the particular user-selectable symbol comprises: detecting user selection of a portion of the interactive display corresponding to a position on the georeferenced map, and identifying the particular user-selectable symbol based, at least in part, on coordinates of the selected position, comprising: searching a set of symbols for a symbol located nearest to the coordinates of the selected position, wherein the set of symbols includes the user-selectable symbols corresponding to the second devices in the group, and wherein data associated with the set of symbols include coordinates of portions of the display

corresponding to the symbols in the set, and based on a result of searching the set of symbols, identifying the particular user-selectable symbol as the symbol located nearest to the coordinates of the selected position, wherein the particular user-selectable symbol corresponds to the particular second device.  For example, the Accused Products include features, as shown below.

75.     For example, Defendant's Accused Products are pre-installed with at least the Google Maps App which allows users to share their locations and view others' locations on a map and to communicate with those users via the Google Maps App (as shown below) which is integrated with Messages and which is also pre-installed on the Accused Products.



76.     Additionally, the exemplary Accused Products allows users to establish groups and to exchange messages via interaction with servers which provide the Google Maps servers, among other relevant services.  The exemplary Accused Products further allows users to retrieve map information from multiple sources, including street-view maps, as well as satellite renderings.

77.     The exemplary Accused Products are programmed to form and join groups by transmitting                                    messages                                    (*e.g.*, https://support.google.com/maps/answer/7326816?visit_id=638038217506681650-271792540&hl=en&rd=1;

https://support.google.com/contacts/answer/30970?hl=en&visit_id=638038217507566921-2877008583&rd=1).

## Create a group

1. Go to Google Contacts ⧉ .
2. At the left under "Labels," click **Create label**.
3. Type a name, then click **Save**.

## Add or remove contacts from a group

Add contacts to a group                                                          ⌃

1. Go to Google Contacts ⧉ .
2. Select one of the following:
   - **A single contact:** Check the box next to the contact name.
   - **Multiple contacts:** Check the boxes next to all the contacts you want to add.
   - **All contacts:** Check the box next to any contact and in the top left, click **Selection Actions** ⟩ **All.**
3. At the top, click Manage labels ▭ .
4. Click the group label you want.
5. Click **Apply**.

**Tip:** If a contact has multiple email addresses, only their default email address is added to the label group. You can use the Contacts app ▪ on an Android device to change the default email address for a contact.

78.     The exemplary Accused Products are further programmed to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information,             as             depicted             below             (*see,*             *e.g.,* https://developers.google.com/maps/documentation/android-sdk/location).

### The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.

- Listen for location changes.

- Determine the mode of transportation, if the device is moving.

- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Maps SDK for Android, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

79.     The location information is presented on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices.  The symbols are positioned on the map at positions corresponding to the locations of the other devices, as depicted below (*e.g.*, https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



80.     The exemplary Accused Products are further programmed to permit users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting satellite images or other types of maps.  The exemplary Accused Products are

further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

81.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '123 Patent in an amount to be proved at trial.

82.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '123 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AGIS Software prays for relief against Defendant as follows:

a.     Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.     Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit has been willful and deliberate;

c.     An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

d.     An order awarding damages sufficient to compensate AGIS Software for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

e.      An order awarding AGIS Software treble damages under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the Patents-in-Suit;

f.      Entry of judgment declaring that this case is exceptional and awarding AGIS Software its costs and reasonable attorney fees under 35 U.S.C. § 285; and

g.      Such other and further relief as the Court deems just and proper.

Dated:  November 18, 2022                    Respectfully submitted,

 */s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email:  plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email:  vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

***ATTORNEYS FOR PLAINTIFF***
***AGIS SOFTWARE DEVELOPMENT LLC***